

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

December 17, 2025

**BY ECF AND EMAIL**

The Honorable Naomi R. Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    **United States v. Jovonne McDuffie**, 25 Cr. 408 (NRB)

Dear Judge Buchwald:

    The Government respectfully submits this letter in advance of the defendant Jovonne McDuffie's sentencing, currently scheduled for December 23, 2025. The parties have stipulated to an applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 37 to 46 months' imprisonment (the "Stipulated Guidelines Range" or "Guidelines Range"). For the reasons explained below, a sentence at the lower end of the Guidelines Range would be sufficient but not greater than necessary to serve the purposes of sentencing.

    A.  **Factual Background**

*The October 23, 2024 Robbery*

    On October 23, 2024, McDuffie and his co-conspirator, David Almanzar, entered an electronics store in the vicinity of Crosby Avenue in the Bronx. Almanzar walked up to the store employee sitting behind the counter (Victim-1") and asked if there was a safe, to which Victim-1 responded that there was no safe. Almanzar then shoved Victim-1 off the chair on which he was sitting and into a backroom. McDuffie followed Almanzar and Victim-1 into the back room, and along the way, grabbed two boxes of what appeared to be Apple iPhones from the under-counter display case. (Presentence Investigation Report ("PSR") ¶¶ 11-12).

    Once in the backroom, Almanzar took Victim-1's cellphones and returned to the front of the store, where he took boxes of electronics from the under-counter display case, including what appeared to be seven Apple iPhones, four Apple watches, five Apple AirPods, two Apple laptops, two apple Samsung phones and one Samsung watch. Almanzar also went to a display case at the side of the store, pulled out two Sony PlayStations and an Xbox gaming console, and placed them on the floor. (PSR ¶¶ 13 and 14).

While Almanzar was ransacking the front of the store, McDuffie remained in the backroom with Victim-1, staying close to Victim-1 and using his (McDuffie's) body to cut off any potential escape for Victim-1, intimidate Victim-1, and force Victim-1 into a corner of the backroom. (PSR ¶ 15.)

After a couple of minutes, Almanzar went to the backroom again, took the Apple watch that Victim-1 was wearing, and handed it to McDuffie. Almanzar also went through Victim-1's left pocket, felt the outside of Victim-1's right pocket, and wagged his finger in Victim-1's face. Almanzar and McDuffie then left the backroom and closed the door to the backroom. As Almanzar and McDuffie left the store, McDuffie picked up the PlayStations and Xbox from the floor and took them with him. (PSR ¶ 17).

*The October 25, 2024 Robbery*

Two days later, on October 25, 2024, Almanzar, McDuffie, and a third individual who acted as a lookout ("Individual-3") entered a cellphone store located on Broadway Avenue in Manhattan. Between loitering in the store with McDuffie and Individual-3, Almanzar spoke intermittently to the employee behind the desk ("Victim-2") about what cellphones were available in the store. When Victim-2 announced that she needed to close the store, Almanzar and McDuffie confronted Victim-2, using their bodies to block her ability to exit from behind the desk to lock up the store. (PSR ¶¶ 18-19).

Almanzar repeatedly directed Victim-2 to hand over her cellphone and to move out the way so they could rob the store, threatening, "you're going to get hurt." Additionally, McDuffie ordered Victim-2 to go into the back room and attempted to snatch Victim-2's cellphone out of Victim-2's hand, which Victim-2 resisted. Eventually, McDuffie forced Victim-2 into the backroom as Almanzar started going through the drawers behind of the desk. Then the door to the backroom was closed briefly. (PSR ¶ 20).

McDuffie reopened the backroom door and, along with Almanzar, directed Victim-2 to tell them where the keys were to open the cabinets along the sides of the store. After pointing out a set of keys, McDuffie had Victim-2 return to the backroom and closed the door. Almanzar used the keys to open the cabinets, and he and McDuffie began pulling boxes with cellphones out of the cabinet and placing them into black plastic bags. Eventually, the lookout warned Almanzar and McDuffie that they needed to get out and all three left the store.

### B. Procedural History and Guidelines Calculation

On November 7, 2024, the Honorable Jennifer E. Willis, United States Magistrate Judge for the Southern District of New York, issued a Complaint against Almanzar and McDuffie in seven counts, of which McDuffie was charged in four of the counts with substantive Hobbs Act robberies and conspiracies to commit Hobbs Act robberies (Counts One through Four) (*See* Dkt. No. 1, Complaint.) Law enforcement attempted to arrest McDuffie at his residence on November 22, 2024, but were unsuccessful. On December 17, 2024, McDuffie self-surrendered to the U.S. Marshals and, on the consent of the Government, was released on bail. One of the conditions of

Case 1:25-cr-00408-NRB    Document 68    Filed 12/17/25    Page 3 of 7

Page 3

his release on bond was that McDuffie was not to have any contact with his then-girlfriend because there was an active order of protection barring him from contacting her. (Dkt. 8.)

Just a few weeks later, on or about January 8, 2025, law enforcement officers were called to McDuffie's residence for a domestic incident involving McDuffie. (PSR ¶ 6). Although McDuffie's mother reported the contact with law enforcement to Pretrial Services (as required under the conditions of pretrial release), she withheld the fact that the incident involved McDuffie's then-girlfriend. Once alerted to this omission, the magistrate court ordered a bail revocation hearing, which was postponed so the parties could try and negotiate a resolution. Before the bail revocation hearing could be rescheduled, however, on or about March 15, 2025, McDuffie was arrested for another domestic violence incident in which McDuffie struck a different woman with his fist and placed his hands around her neck. (PSR ¶¶ 6, 6; *see also* Dkt. 33, Tr. 3-16). On March 25, 2025, the Honorable Valerie Figueredo, United States Magistrate Judge for the Southern District of New York, ordered McDuffie remanded, and on April 10, 2025, the Honorable Eduardo Ramos, United States District Judge for the Southern District of New York, affirmed the remand order. (Dkt. 26 and Minute Entry on April 10, 2025).

On or about September 9, 2025, pursuant to a plea agreement, McDuffie pled guilty before this Court to an Information charging McDuffie with one count of conspiring to commit two Hobbs Act robberies, in violation of 18 U.S.C. § 1951. (*See* PSR ¶¶ 1-5.) As reflected in the parties' plea agreement and correctly calculated by Probation in the PSR, the applicable Guidelines Range is 37 to 46 months' imprisonment calculated on the basis of an offense level of 21—the two robberies were grouped, with a base offense level of 20 for the October 23, 2024 robbery, plus 2 levels because McDuffie restrained Victim-1; a base offense level of 20 for the October 25, 2024 robbery, plus two levels because McDuffie restrained Victim-2; two levels added to the robbery with the highest offense level, resulting in an initial offense level of 24; and a reduction of three levels for acceptance of responsibility—and a Criminal History Category of I, calculated using the November 2024 edition of the Guidelines Manual.[1] (PSR ¶¶ 34-61, 96.)

### C. Probation and Defense Counsel's Recommended Sentences

Probation recommends a sentence of 37 months' imprisonment based on the seriousness of the offense conduct; McDuffie's likelihood of reoffending, given that he has non-compliant with the terms of his pretrial supervision and the protective order, as a well as his history of disciplinary sanctions while in pretrial detention at the MDC; and the lack of any mitigating factors sufficient to outweigh the seriousness of the offense and the need for deterrence (PSR at p. 27.)

---

[1] Because the defendant's Guidelines calculation under the November 1, 2025 Guidelines manual results in the same Guidelines range, offense level, and criminal history as under the November 1, 2024 Guidelines manual, using the November 1, 2025 Guidelines manual does not result in a violation of the *ex post facto* clause of the Constitution. In particular, U.S.S.G. § 2B3.1(b)(4)(B) of the November 1, 2024 Guidelines manual would still have applied even without the amendments to that section that were made as part of the November 1, 2025 Guidelines manual.

The defense seeks a sentence of time served (approximately nine months) because of, among other things, McDuffie's history of being bullied to the point of dropping out of high school; his generosity as an uncle and member of his community; his addiction to opioids after being hit by a car in 2023 and getting in a physical altercation in 2024; his adolescence and the influence of his older co-conspirator; the sentences of other defendants falling under the same Guidelines and criminal history category; and the conditions at the Metropolitan Detention Center—Brooklyn ("MDC"). Defendant's Sentencing Submission ("Def. Sub.") 15-24.

### D. Discussion

#### 1. Applicable Law

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence for criminal conduct;
> (C)  to protect the public from further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### 2. A Sentence At the Lower End of the Guidelines Range Is Appropriate

The Government's recommendation of a sentence at the lower end of the Guidelines Range is based on the seriousness of the offense, general and specific deterrence for future criminal conduct, promoting respect for the law, protecting the public, and the defendant's characteristics and history.

*First*, a sentence at the lower end of the the Guidelines Range would reflect the nature and seriousness of the offense. Although he did not use a gun or other weapon at the robberies, McDuffie still participated in a crime of violence that involved intentionally invoking fear through

threats of bodily harm, snatching watches or cellphones directly from the victims, and using force against innocent people to confine them in backrooms. McDuffie did so with no regard for the psychological fear or trauma that he caused Victims-1 and -2, or for the kind of economic harm he caused the business establishments.

*Second*, a sentence at the lower end of the Guidelines Range is necessary to promote respect for the law, protect the community, and adequately deter McDuffie and others. Although the defendant does not have any prior convictions, he has shown that he had no respect for the law when he committed the offense of conviction; failed multiple times to abide by the conditions of pretrial release when he made contact with his then-girlfriend despite a protective order, punched and choked another girlfriend, and misled Pretrial Services; disregarded a state court judge's protective order that barred him from having any contact with his then-girlfriend; and repeatedly violated the rules and regulations of the MDC. In the process, he has harmed Victims-1 and -2, two intimate partners, and the community. A sentence at the lower end of the Guidelines Range would be appropriate to deter the defendant, protect the community, and promote respect for the law.

*Third*, a sentence at the lower end of the Guidelines Range would take into account the defendant's characteristics and history. The Government recognizes that McDuffie had a childhood disrupted by bullying, has been suffering from drug addiction and financial instability, and that he was young at the time he committed his crimes. However, like Probation, the Government believes that these factors do not outweigh a sentence within the Stipulated Guidelines Range, particularly when balanced against the seriousness of his conduct, his blatant lack of respect for the law, the need to deter those who think about committing robberies, and the need to protect the community from violent crimes.

In sum, a sentence within the Guidelines Range would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

### *Response to McDuffie's Other Arguments*

McDuffie argues that (i) he is less culpable than his co-defendant; (ii) sentencing disparities would result from a Guidelines sentence given that the average sentence for an individual with his same Guidelines range and criminal history category is 29 months; (iii) several individuals in this District who appear to be similarly situated received sentences of time served; and (iv) the conditions at the MDC warrant a downward variance. (Def. Sub. 16, 22-25, 26-27). The Government addresses these arguments in turn.

The Government agrees that McDuffie is less culpable than his co-defendant Almanzar, but McDuffie's role was not insubstantial. He was not just a getaway driver, a lookout, or someone who recruited others to participate in the robbery—he personally participated in victimizing and confining two employees in the backrooms of business establishments and grabbed merchandise from both business establishments. Moreover, Almanzar, who has not yet been sentenced but is before this Court after having pled guilty on December 9, 2025 (*U.S. v. Almanzar*, 25 Cr. 665) (NRB), Dkt. 69), has not yet been sentenced. The Court can and should fashion a sentence at that time to account for the differences between McDuffie and Almanzar. The Court should also note

that the differences in their culpability are already fairly captured in the their Guidelines ranges, which is 37 to 46 months for McDuffie and 63 to 78 months for Almanzar.

With respect to the reference to the statistical average, such a statistic says very little about whether McDuffie is more or less culpable than (or of similar age, background, *etc.* as) the "average" defendant or any particular defendant who is part of the calculated "average." *See, e.g.*, *United States v. Lucero*, 130 F.4th 877, 887 (10th Cir. 2025) ("[R]eports on national averages are not dispositive because they do not provide information into a defendant's individual history and characteristics, and [the defendant] does not explain how he is similarly situated with those of the national average."). Recognizing that a bare reference to statistic is not enough, McDuffie astutely points to several cases from this District in which individuals who committed robberies received sentences of time served. However, each of these cases are distinguishable:

- In *United States v. Powell* (S.D.N.Y. 21 Cr. 498) (AT), the defendant there was a getaway driver, and in *United States v. Vasquez* (S.D.N.Y. 11 Cr. 294) (NRB), the defendant was a getaway driver and helped recruit family member to participate in the robbery. Thus, they played a much lesser role in the offense conduct than McDuffie, who actively victimized employees and stole merchandise.

- Moreover, the defendant in *Vasquez* had successfully been out on pretrial release for two years and was employed, demonstrating he was on the road to turning his life around. Here, McDuffie has not demonstrated the same and has, in fact, committed serious violations of the conditions of pretrial release.

- Finally, in *United States v. Mbaye* (24 Cr. 184) (ER), the defendant was 18 years old at the time that he committed the robberies, and his defense counsel successfully argued that had the state taken the case, Mbaye would very likely have received youth offender adjudications resulting in no jail time and no felony record. (Mbaye Sentencing Tr., Dkt. 43, 13:7-13:15). Here, the robberies that McDuffie committed would not have been eligible for consideration as youth offender adjudications given his age.

Finally, with respect to the conditions at the MDC, McDuffie relies on outdated caselaw and facts. Since the Honorable Jesse M. Furman issued his opinion in *United States v. Chavez*, 710 Fed. Supp. 3d 227 (S.D.N.Y. 2024) in January 2024, much has changed at the MDC, including in the area of healthcare. For example, as of September 2025, the MDC's Health Services Department is staffed at 85% (33 of 39 positions filled), compared to 69% in January 2024. Moreover, via telehealth, MDC inmates can see cardiology, dermatology, and gastrointestinal specialists at Brookdale Hospital, and the Bureau of Prison's ("BOP") opioid treatment program is also administered via telehealth with BOP providers.

In response to applications for bail or reduced sentences based on the conditions of MDC, courts in this District have recognized the improved conditions at the MDC. *See e.g.*, *United States v. Sandy Carazas-Pinez*, 23 Cr. 346 (JPC) (Sept. 19, 2025 sentencing); *United States v. Clinton McCullum*, 24 Cr. 667 (JPC) (Aug. 29, 2025 sentencing); *United States v. Jean Carlos Burgos*, 24 Cr. 650 (LTS) (May 21, 2025 plea); *United States v. Kevin Reshard*, 24 Cr. 392 (JMF) (May 14,

2025 sentencing); *United States v. Alon Alexander et al.*, 24 Cr. 676 (VEC) (Jan. 16, 2025 bail argument). As just one example:

> With respect to other arguments made in the defense's submission, on the MDC front, I'm certainly more than familiar with the circumstances at the MDC, and the place has still much need for improvement, but it is also a lot better than it was in January of last year when I wrote my opinion in *United States v. Chavez* that is cited in the defense's submission. As it happens, I just came from a meeting involving representatives of the MDC and got latest statistics, which is that staffing is up to 75 percent, the medical services staff is significantly higher and fully staffed among nurses, the incidents of violence went from 42 in December, which was a rather significant number, to only nine in April; all of which is to say it's not nearly as bad as it was a year and a half ago and it's definitely trending in the right direction.

*Reshard*, 24 Cr. 392 (JMF) (May 14, 2025 sentencing).

### E. Conclusion

For the reasons set forth above, the Court should impose a sentence of imprisonment within the Guidelines Range.[2]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:   /s/
Timothy Ly
Assistant United States Attorney
Tel: (212) 637-1062

Cc:   Marc Silverman, Esq.
Danya Perry, Esq.
Joshua Stanton, Esq.
Kenneth Crouch, Esq.

---

[2] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court imposes, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).